IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **REFINED TECHNOLOGIES, INC.** § | | |
| § | | |
| **Plaintiff,** § | | |
| § | **CIVIL ACTION NO. 3:22-cv-00197** | |
| **vs.** § | | |
| § | | |
| **USA DEBUSK LLC** § | **JURY TRIAL DEMANDED** | |
| § | | |
| **Defendant.** § | | |

**MOTION TO STRIKE THE UNAUTHORIZED AND IMPROPER
"REBUTTAL" REPORT OF TERRY LIVINGSTON, P.E. (SEALED)**

## I.   INTRODUCTION

Plaintiff Refined Technologies, Inc. is seeking an impermissible second bite at the apple on the issue of infringement through a second, so-called "rebuttal" report from its retained expert, Terry Livingston, P.E. This report comes after (i) Plaintiff served, an initial expert report from Mr. Livingston by the April 24, 2025 deadline on issues for which the parties bear the burden of proof and (ii) Defendants served a rebuttal report from their expert, Peter N. Loezos, Ph.D., in which Dr. Loezos thoroughly explained the scientific experimentation he performed in thoroughly discrediting Mr. Livingston's methodology and highlighting major gaps in his opinions on infringement.

Mr. Livingston, by contrast, engaged in no experimentation or calculations to support the naked opinions contained throughout his initial report. Faced with this, Mr. Livingston (and/or Plaintiff's attorneys) decided to fill in major gaps in his report by taking Dr. Loezos' experimental results and applying calculations to them to render new

opinions. Specifically, Mr. Livingston took the data from Dr. Loezos' experiments and twisted and subjected it to his own results-oriented calculations. Mr. Livingston also created hundreds of pages of exhibits, which he attached to his "rebuttal" report, all in an effort to make it appear as though his previously unsupported opinions on infringement have reams of support (when, in fact, they do not).

This is no rebuttal, nor is it proper supplementation under Rule 26. It is a naked effort by Mr. Livingston to "to smuggle a 'new and improved' expert report into the record," and make it appear as though he employed a robust and thorough scientific methodology in reaching his conclusions. *Ideus v. Deere*, No. 2:22-CV-00132, 2023 U.S. Dist. LEXIS 110090, at *28 (S.D. Tex. Apr. 18, 2023). The problem is that he did not do so, and should not be permitted, through the guise of rebuttal, to twist and recast Dr. Loezos' work in order to cover his own "failures of omission." *Id.* at 29. In that regard, there is no reason Mr. Livingston could not have performed his own experiments and calculations and detailed them in exhibits to his initial report. He just opted not to. The fact that this opened him up to a sharp and fair critique by Dr. Loezos is no ground for Mr. Livingston to seek to backfill his initial report. Allowing a new opinion at this late date would cause extreme prejudice as discussed below. Accordingly, and as follows, the Court should strike Mr. Livingston's so-called "rebuttal" report.

## II.   FACTS

The Court's Amended Scheduling Order (Doc. 73) requires that, by April 24, 2025, the parties were to serve their expert reports on any issue for which they bear the

burden of proof.  Responsive reports were due by May 22, 2025, which the parties agreed to extend to May 29, 2025.

On April 24, 2025, Plaintiff, which bears the burden of proof on infringement, served the Rule 26(a)(2) Expert Report of Terry Livingston, P.E.  A copy of Mr. Livingston's Report is attached as Exhibit "A."  Mr. Livingston's initial report states that the scope of his opinions include "[w]hether [Defendant USA DeBusk LLC's ("USAD")] competitive method, as practiced by USAD, satisfies or meets every element of certain claims of the [9,017,488] Patent" (the "'488 Patent")  *Id.* at 2.

By way of background, the '488 Patent is directed to a process for "quickly removing hydrocarbon contaminants and noxious gases in a safe and effective manner from catalytic reactors, other media packed process vessels and associated equipment in the vapor phase without using steam." '488 Patent at Abstract.  Specifically, claim 1 of the '488 Patent pertains to:

> 1. A method for removing a contaminant from a process system, comprising the steps of:
>
>> (i) providing a water-free carrier gas source;
>>
>> (ii) providing a non-aqueous solvent source;
>>
>> (iii) volatilizing non-aqueous solvent from the non-aqueous solvent source in water-free carrier gas from the carrier gas source and delivering the carrier gas containing the volatilized non-aqueous solvent to the process system and
>>
>> (iv) removing said contaminant out of said system, wherein a substantial amount of said contaminant is dissolved in said solvent in a vapor or liquid state as it is being removed from said system.

'488 Patent at Claim 1.

For a process to infringe claim 1, it must meet every element of the claim. However, Mr. Livingston's initial report fails to demonstrate that USAD's KixClear cleaning process meets the features disclosed in elements (iii) and (iv). This is addressed at length by defense expert, Peter N. Loezos, Ph.D., in his rebuttal report. A copy of Dr. Loezos' Report Regarding the Expert Report of Terry Livingston, P.E. On Patent Infringement is attached as Exhibit "B."

As Dr. Loezos explains, Mr. Livingston's analysis of element (iii) and (iv) is woefully deficient. Mr. Livingston's infringement analysis concludes only that  *Id.* at 86. "At least a portion of the solvent" is far short of "at least 50%." There are multiple problems with this. First, Mr. Livingston does not explain what he means by ▮. *Id.* at 87. Second, he ignores the Court's claim construction ruling that the amount of solvent that is volatilized must be sufficient "to effect the remaining steps of the claims," i.e., dissolving more than 50% of the contaminants from the system. *Id.* Mr. Livingston wholly fails to state or analyze whether ▮ would dissolve at least 50% of the contaminants present in the reactor to which the volatilized solvent is delivered. *Id.* In fact, Mr. Livingston performed no testing or analysis to assess this. *Id.* However, Dr. Loezos did.

4

Dr. Loezos performed a series of experiments to ascertain whether a volatilized solvent (such as KixClear) can be effective in removing organic contaminants of the type that would be expected to be found in a reactor unit.  *Id.* at 74.  To ensure his experiments were scientifically sound, Dr. Loezos included an experimental group, which included KixClear, and a control group, which did not.  Based on the results of these experiments, Dr. Loezos found that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  *Id.* at 71-84.  That means KixClear has ▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  *Id.*

That should have ended the discussion about whether USAD's KixClear process practices the features disclosed in elements (iii) and (iv).  But, Mr. Livingston was not done.  Having failed to conduct any experiments of his own prior to authoring his report, Mr. Livingston, in a so-called "Rebuttal Report" sought to make Dr. Loezos' experiments his own.  Mr. Livingston's Rebuttal Report is attached as Exhibit "C."  However, this is no "rebuttal."  It is nothing more than a weak attempt by Mr. Livingston to backfill his failure to assess whether any amount of volatilized solvent can remove at least 50% of the contaminants present in the reactor to which the volatilized solvent is delivered (even assuming 100% vaporization).  Specifically, Mr. Livingston took the findings of Dr. Loezos and applied calculations to them to reach a new conclusion that the "▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  Mr. Livingston also floods the record with over 200 pages of exhibits to support his newly disclosed calculations.

## III. LACK OF JUSTIFICATION & EXTREME PREJUDICE

While USAD disputes Mr. Livingston's calculations and conclusions, they should be stricken. Mr. Livingston had more than ample opportunity to conduct his own experimentation, apply his calculations, and reach his conclusions before his initial report on infringement was due. There is no justification for his failure to do so. Then, realizing the report by Dr. Loezos thoroughly rebuts him, Mr. Livingston sprung his so-called "rebuttal" report (including hundreds of pages of exhibits) on Defendants on June 23, 2025, just four days before his deposition was scheduled to proceed[1] and a little more than two weeks prior to the deadline for dispositive motions. This is highly improper and prejudicial. Thus, for the reasons that follow, the Court should strike Mr. Livingston's "rebuttal" report.

## IV. ARGUMENT

### A. The Court Should Strike Mr. Livingston's Improper "Rebuttal" Report

Mr. Livingston's purported "rebuttal" report is nothing more than an attempt "to smuggle a 'new and improved' expert report into the record." *Ideus*, 2023 U.S. Dist. LEXIS 110090, at *28. This Court does not countenance such conduct. As such, Mr. Livingston's "rebuttal" report should be stricken.

The Court's scheduling Order required Plaintiff to designate its expert on infringement, and produce his report, on or before April 24, 2025. Plaintiff did so by

---

[1] The parties agreed to extend the deadline to conduct expert depositions to June 27, 2025.

producing the Mr. Livingston's initial report. The Court also allowed the parties to file rebuttal reports to the other side's expert reports. By agreement, they did so on May 29, 2025. The Court did not provide for any sur-rebuttals or other expert disclosures.

Mr. Livingston's "rebuttal" report is not a proper rebuttal. A rebuttal report is permitted only if it "is intended . . . to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. Pro. 26(a)(2)(D)(ii). Here, Dr. Loezos rebutted Mr. Livingston. Mr. Livingston does not get to reply. Under the Rules, Mr. Livingston's initial report was to contain "*a complete statement of all opinions* [he] will express and the basis and reasons for them . . . the facts or data considered by [him] . . . [and] any exhibits that will be used to summarize or support them." *Id.*(a)(2)(B)(i)-(iii) (emphasis added). He cannot, through the guise of "rebuttal," seek to backfill his otherwise deficient report.

Plaintiff also cannot claim that Mr. Livingston's report constitutes a "supplement" under Rule 26(a)(2)(E). "'Permissible supplementation means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" *Ideus*, 2023 U.S. Dist. LEXIS 110090, at *24 (quoting *Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 421 (S.D. Tex. 2012)). "If the purportedly supplemental expert report 'does not rely upon information previously unknown or unavailable to [the expert] before, it is not an appropriate supplemental report.'" *Id.* (quoting *Conn v. C.R. Bard, Inc.*, No. 4:14-CV-298, 2021 U.S. Dist. LEXIS 107522, 2021 WL 2328389, at *1 (S.D. Tex. June 8, 2021)). "'The purpose of supplementary disclosures is just that — to supplement. Such disclosures are not

7

intended to provide an extension of the expert designation and report production deadline.'" *Id.* (quoting *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998)). Importantly, "supplemental disclosures 'are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information.'" *Id.* (quoting *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 371 (5th Cir. 2016)).

"Courts generally distinguish true supplementation (such as correcting inadvertent errors or omissions) from gamesmanship, and have repeatedly rejected attempts by parties to bolster their position by 'supplementing' an expert report with a 'new and improved' expert report." *Id.* at *24-25. "'To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given.'" *Id.* at *25 (quoting *Cooper v. Meritor, Inc.*, No. 4:16-CV-52-DMB-JMV, 2019 U.S. Dist. LEXIS 21788, 2019 WL 545187, at *7 (N.D. Miss. Feb. 11, 2019)).

This is precisely why the Court should strike Mr. Livingston's purported "rebuttal" report. It is nothing of the sort. Mr. Livingston—who engaged in no experimentation himself—seeks to bolster his own opinion by glomming onto the experimentation conducted by Dr. Loezos. Mr. Livingston seeks to twist the results of Dr. Loezos' experiments to bolster and support his otherwise unsupported opinions in this case and make it appear as though his work is the product of a scientific method he

did not employ and supported by hundreds of pages of exhibits he did not initially produce.

There is no reason that Mr. Livingston could not have performed his own experimentation, crunched the numbers, prepared exhibits, and offered the same opinions in his initial report. He just chose not to. Under similar circumstances, this court, in *Conn v. C.R. Bard*, *supra*, struck an expert's late disclosure where the opinions plaintiff's expert witness sought to offer could have been timely disclosed in his initial expert report. *Conn*, 2021 U.S. Dist. LEXIS 107522, at *7. Additionally, as in this case, there was no justification for the expert's failure to do so. *Id.*

Additionally, in *Daedalus Blue LLC v. SZ DJI Tech Co.*, No. W-20-CV-00073-ADA, 2022 U.S. Dist. LEXIS 48931 (W.D. Tex. Feb. 24, 2022), an expert's second report was stricken where, as here, there was no dispute that it was intended to rebut the report of another expert. *Id.* at *19. That is not a valid basis for supplementation. As the court held, "supplemental reports are not vehicles by which experts can rework their initial reports to respond to problems that their adversaries aptly address." *Id.* In other words, "Rule 26(e) does not contemplate the use of supplementation as a cover for 'failures of omission because the expert did an inadequate or incomplete preparation.'" *Ideus*, 2023 U.S. Dist. LEXIS 110090, at *29 (quoting *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002)). However, that is precisely what Mr. Livingston seeks to do.

Additionally, it must be noted that the supplemental disclosure rules are intended to prevent prejudice and surprise. *Id.* at *24. However, that is the precise result of Mr.

9

Livingston's improper rebuttal. Just 3 days before his deposition, he produced a brand new report containing brand new opinions and over 200 pages of exhibits. That is hardly sufficient time for Defendant to digest the report and prepare to depose Mr. Livingston about it and to properly frame the issues in dispositive motions. As the court held in *Daedalus Blue LLC*, the service of a supplemental report on the eve of an expert's deposition and the deadline for *Daubert* motions give the other side "no time to digest and address the contents" of that report. *Daedalus Blue LLC*, 2022 U.S. Dist. LEXIS 48931, at *16. Additionally, the court must account for the substantial resources USAD has already expended in responding to and rebutting Mr. Livingston's initial report, amounts that will be compounded if USAD is required to do it all over again in response to Mr. Livingston's "rebuttal" report. *Id.* at *15. That is patently unfair and prejudicial.[2]

Accordingly, the Court should strike Mr. Livingston's "rebuttal" report because: (i) is not a rebuttal under Rule 26, (ii) does not supplement—but seeks to cover the failures of omission in—his initial report, and (iii) prejudices USAD's ability to prepare

---

[2] It should be noted that, while USAD has addressed the lack of justification for, and prejudice caused by, Mr. Livingston's untimely and improper "rebuttal" report, Plaintiff bears the burden to prove that it was nonetheless "substantially justified or harmless." *Wal-Mart Stores v. Tex. Alcoholic Bev. Comm'n*, No. 1:15-cv-134-RP, 2017 U.S. Dist. LEXIS 230833, at *7 (W.D. Tex. May 22, 2017). Plaintiff cannot meet that burden. As the court, in *Walmart*, held, late and improper supplementation should be denied and stricken where, as here, there is "no compelling explanation" for an expert's "failure to timely produce a complete expert report," there is clear prejudice by the service of a late and improper supplemental report, made on the eve of or "after the depositions of . . . experts were underway" and just prior to the deadline for dispositive motions, and where supplementation would require the amendment of the other party's rebuttal report "which would be both time-intensive and expensive." *Id.* at 9-10.

for Mr. Livingston's deposition and defend against Plaintiff's claims (as recently modified by Mr. Livingston's untimley "rebuttal report").

## V.  CONCLUSION

For each of the foregoing reasons, USAD respectfully requests that the Court strike Mr. Livingston's untimely and improper "rebuttal" report.

Dated: June 25, 2025                                     Respectfully submitted,

**DUANE MORRIS LLP**

*/s/ Thomas W. Sankey*
**Thomas W. Sankey**
Attorney-in-charge
State Bar No.: 17635670
SDTX Bar No.: 7329
**Diana M. Sangalli**
State Bar No.: 24033926
SDTX Bar No.: 950229
**Wesley W. Yuan**
State Bar No.: 24042434
SDTX Bar No.: 808725
**DUANE MORRIS LLP**
1300 Post Oak Blvd., Ste. 1500
Houston, TX 77056
Telephone: 713-402-3900
Facsimile:  713-402-3901

**COUNSEL FOR DEFENDANT USA DEBUSK LLC**

## CERTIFICATE OF CONFERENCE

I certify that on June, 2025, counsel for Defendant USA Debusk LLC, Thomas W. Sankey, conferred with counsel for Plaintiff, James Hall and Cabrach Connor, regarding the relief sought in this Motion, and Plaintiff's counsel advised that Plaintiff is opposed to the relief sought.

*/s/ Thomas W. Sankey*
Thomas W. Sankey

## CERTIFICATE OF SERVICE

I certify that on this 25th day of June, 2025, I served a true and correct copy of the foregoing document upon all counsel entitled to receive such notice via the Court's electronic filing system and/or electronic mail.

*/s/ Wesley W. Yuan*
Wesley W. Yuan

DM2\21643814.1